**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RICHARD R. STAGNONE,<br><br>Plaintiff,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, BOARD OF DIRECTORS OF THE FEDERAL RESERVE SYSTEM, MARK VAN DER WEIDE, JEFFERY VISCOMI, MATTHEW GLOVER<br><br>Defendant. | Civil Action No. 26-12230-MJJ |

**MEMORANDUM OF DECISION**

September 10, 2026

JOUN, D.J.

The dispute between Richard Stagnone ("Plaintiff" or "Mr. Stagnone") and his former employer State Street Bank & Trust Co. ("Defendant" or "State Street") has spawned at least six related proceedings: an administrative action before the Massachusetts Commission Against Discrimination ("MCAD"), three civil actions[1], and two criminal proceedings. To the best of my knowledge, all but two—the first and third civil actions—have been resolved. The first resides in Massachusetts state court while the third is before me. Today's decision chronicles relevant procedural and factual events from the three civil actions relevant to the matters now before me. I then address State Street's pending motion for sanctions and, ultimately, dismiss this third action in its entirety.

---

[1] *Stagnone v. State Street Bank & Trust Co. et al.*, No. 26-cv-10144 ("*Stagnone I*"); *Stagnone v. The Board of Governors of the Federal Reserve System et al*, No. 26-cv-12027 ("*Stagnone II*"); and *Stagnone v. The Board of Governors of the Federal Reserve System et al.*, No. 26-cv-12230 ("*Stagnone III*").

## I. BACKGROUND

State Street is a bank registered in Massachusetts. [*Stagnone I*, Doc. No. 1-1 at 4]. From November 16, 2020, until his termination on April 24, 2025, State Street employed Mr. Stagnone as a member of its Enterprise Technology Risk Management group, which provides technology-risk and cybersecurity services. *See* [*id.* at 8]; [*Stagnone I*, Doc. No. 31 at 12]. Mr. Stagnone alleges that State Street employees subjected him to workplace discrimination, retaliation, harassment, and a hostile work environment. *See generally* [*Stagnone I*, Doc. No. 1-1]. In response, he filed internal complaints with State Street's Human Resources group ("HR complaints" or "Speak Up complaints"), an administrative complaint with the Massachusetts Commission Against Discrimination ("MCAD"), and the complaint in *Stagnone I* in Massachusetts state court. *See* [*Stagnone I*, Doc. No. 1-1 at 2–9]; [*Stagnone III*, Doc. No. 1 at 3].

The original complaint in *Stagnone I*, as well as the first amended complaint filed three days later, asserted statutory and tort claims arising from Mr. Stagnone's workplace environment and the alleged mistreatment. *See* [*Stagnone I*, Doc. No. 18-2 at 2]; *see also* [*Stagnone I*, Doc. No. 1-2 at 2]. Those complaints also contained three paragraphs—paragraphs 40, 42, and 44 (collectively, the "CSI Paragraphs")—that publicly disclosed confidential supervisory information ("CSI"), which federal banking regulations require to remain confidential. *See* [*Stagnone I*, Doc. No. 12-2 at 3]. State Street maintains that it terminated Mr. Stagnone for cause because, for a non-business purpose, he publicly disclosed CSI in the *Stagnone I* complaint and subsequently refused to remove that information when asked to do so. See generally [*Stagnone III*, Doc. No. 1-4]. Mr. Stagnone disputes that explanation as pretextual. He contends that State Street instead terminated him in retaliation for filing the Speak Up complaints, the MCAD complaint, and the *Stagnone I* action. *See* [*Stagnone III*, Doc. No. 1 at 3].

The parties continue to dispute whether Mr. Stagnone unlawfully disclosed CSI and the extent of the redactions necessary to protect the information contained in the CSI Paragraphs. See generally [*Stagnone III*, Doc. Nos. 9, 11, 11-1, 20]. On May 21, 2025, the state court ordered the CSI Paragraphs redacted in their entirety. [*Stagnone I*, Doc. No. 12-2 at 3]. After *Stagnone I* was removed to this Court, I adopted that order on February 9, 2026. [*Stagnone I*, Doc. No. 14]. To date, Mr. Stagnone has filed at least six pleadings that do not comply with these impoundment orders. See [*Stagnone I*, Doc. No. 10-2 at 32]; [*Stagnone I*, Doc. No. 16-1 at 1]; [*Stagnone I*, Doc. No. 18-1 at 6–7]; [*Stagnone I*, Doc. No. 18-2 at 4–6]; [*Stagnone I*, Doc. No. 31 at 45]; [*Stagnone II*, Doc. No. 1 at 13]; [*Stagnone III*, Doc. No. 1 at 25–26]. State Street now brings its fourth motion for sanctions against Mr. Stagnone based on his repeated violations of those orders. [*Stagnone III*, Doc. No. 9].

Against this backdrop, the remainder of the background proceeds in two parts. First, I briefly review the federal regulatory framework governing CSI. Second, I recount the relevant procedural history, including Mr. Stagnone's disclosures of CSI during these proceedings and his related communications with the Board of Governors.

### A. <u>**Confidential Supervisory Information ("CSI")**</u>

The Board of Governors (the "Board") is the central governing body of the Federal Reserve System and is responsible for supervising and investigating financial institutions and bringing enforcement actions against them. *See* 12 C.F.R. § 261.2(b)(1). Information "created or obtained in furtherance of the Board's supervisory, investigatory, or enforcement activities . . . relating to any supervised financial institution, and any information derived from or related to such information" constitutes CSI and is the property of the Board. *Id.*; *id.* at § 261.20(a).

Federal regulations restrict the use and disclosure of CSI. CSI "remains the property of the Board," and no person or entity possessing it may use it for an unauthorized purpose or disclose it

without the prior written permission of the Board's General Counsel. *Id*. § 261.20(a). Consistent with that rule, the Board treats CSI as "confidential and privileged" and generally neither discloses it to the public nor authorizes third parties possessing it to further use or disclose it. *Id*. § 261.23(a)(1). The Board will authorize disclosure only when the requesting person demonstrates a substantial need to use or disclose the information that outweighs the need to preserve its confidentiality. *Id*. And the regulations provide no exception permitting a litigant to use or disclose CSI in judicial proceedings without the Board's authorization. *See id*. § 261.23(b).

Whether particular information qualifies as CSI is, in the first instance, a determination for the Board under its regulations. *See id.* at § 261.2(b)(1) (defining CSI); *see also id.* at §§ 261.20–.23. The Board's regulatory authority over CSI, however, does not displace a federal court's independent authority to manage judicial proceedings and control access to records filed with the court. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)**;** *United States v. Kravetz*, 706 F.3d 47, 54-56 (1st Cir. 2013). Thus, when a party seeking to use or disclose purported CSI fails to establish that the Board has authorized the disclosure or approved particular redactions, the court may need to determine whether the information should nevertheless be withheld from public access. In doing so, the court may order material sealed or redacted when necessary to protect sufficiently compelling interests. *See* Fed. R. Civ. P. 5.2(e); *Nixon*, 435 U.S. at 598–99; *Kravetz*, 706 F.3d at 61**;** *see also* L.R. 7.2.

### B. Litigation History & CSI Disclosures

The pending motion for sanctions bears the case number of the third civil action. [*Stagnone III*, Doc. No. 9]. However, a discussion of all three civil actions, as well as Mr. Stagnone's communications with the Board during those actions, is helpful to assess whether sanctions are appropriate.

### 1. ***Stagnone I***

Plaintiff commenced *Stagnone I* against State Street and several of its employees in Massachusetts Superior Court for Suffolk County on March 3, 2025, and filed an amended complaint three days later. [*Stagnone I*, Doc. No. 12-2 at 2]. The action asserted statutory and tort claims arising from Plaintiff's workplace environment and alleged mistreatment. See generally [*Stagnone I*, Doc. Nos. 1-1, 31]. Both complaints publicly disclosed the information contained in the CSI Paragraphs. See [*Stagnone I*, Doc. No. 12-1 at 2–3]; [*Stagnone I*, Doc. No. 18-3 at 1].

On March 21, 2025, State Street filed an emergency motion to impound both complaints. [*Stagnone I*, Doc. No. 12-1 at 2–3]. The Board subsequently learned of the disclosures, and on March 31, 2025, Senior Counsel Jeff Viscomi notified Plaintiff that the *Stagnone I* complaints contained CSI. See [*Stagnone I*, Doc. No. 18-3 at 2–3] (the "Viscomi Letter"). The Viscomi Letter explained that State Street's pending impoundment motion obviated any immediate corrective action by Plaintiff but instructed him to redact the CSI if that motion were denied. [*Id.*]. It also directed Plaintiff to comply with the CSI regulations going forward and warned that future violations could result in administrative action by the Board. [*Id.*].

In related emails that day, Attorney Viscomi specifically identified paragraphs 40, 42, and 44 as containing CSI that had not been authorized for public disclosure. [*Id.*]. He further explained that he could not provide legal advice, propose redactions, or preapprove court filings; reiterated that Plaintiff must obtain Board approval before disclosing CSI; and clarified that the prohibition extended to disclosing the existence of CSI. [*Id.* at 7]. He also provided instructions for submitting a formal use or disclosure request to the Board. [*Id.*].

State Street terminated Plaintiff's employment on April 24, 2025. [*Stagnone I*, Doc. No. 1-1 at 8].

On May 21, 2025, the state court granted State Street's motion to impound. *See generally* [*Stagnone I*, Doc. No. 12-2]. The court determined that paragraphs 40, 42, and 44 contained CSI, impounded both complaints, and ordered Plaintiff to file an amended complaint with those paragraphs redacted. [*Id*. at 2–3]. The court further provided that any party could move, upon a showing of good cause, to lift, shorten, or extend the impoundment order. [*Id*. at 3].

On May 15, 2025, approximately one week before entry of the impoundment order, State Street moved to dismiss portions of the amended complaint and to strike certain allegations. [*Stagnone I*, Doc. No. 1-2 at 2]. On November 12, 2025, the state court granted the motion and dismissed the complaint without prejudice for failure to comply with Massachusetts Rules of Civil Procedure 8(e)(1), 10(b), and 11. [*Id*. at 2–3]. The court also found that the complaint contained "numerous allegations that are immaterial and inappropriate," including allegations concerning State Street's regulatory interactions and financial practices unrelated to Plaintiff's employment. [*Id*. at 5]. It therefore struck paragraphs 28 through 44 and substantively similar material elsewhere in the complaint and prohibited Plaintiff from including that information in any amended or refiled complaint. [*Id*.].

On December 15, 2025, Plaintiff filed a second amended complaint, adding claims for wrongful termination and violations of federal discrimination statutes. *See generally* [*Stagnone I*, Doc. No. 1-1]. State Street removed the action to this Court on January 14, 2026, [*Stagnone I*, Doc. No. 1 at 1], and moved to dismiss the second amended complaint on January 21, 2026, [*Stagnone I*, Doc. No. 5].

On February 2, 2026, Plaintiff emailed Attorney Viscomi that he intended to challenge the removal and oppose State Street's motion to dismiss. [*Stagnone I*, Doc. No. 10-2 at 6]. Plaintiff stated that doing so required him to file his original state-court complaint in this Court and attached

the document he intended to file. [*Id.*]. He represented that he had made the "required redactions" in "good faith" and informed Attorney Viscomi that he would file the attached document that day. [*Id.* at 6–7]. These communications appear intended to notify the Board of Plaintiff's contemplated filing and document his efforts to redact CSI, rather than to seek authorization to disclose it. See id. Neither email posed a question, identified itself as a request for authorization to use or disclose CSI, or followed the procedures for such a request that Attorney Viscomi had provided on March 31, 2025. *See id.*; [*Stagnone III*, Doc. No. 1-3 at 7].

On February 4, 2026, Plaintiff opposed State Street's motion to dismiss and sought leave to file a third amended complaint omitting all federal claims so that the action could return to state court. [*Stagnone I*, Doc. No. 10 at 2, 4]. Exhibit B to that filing included Plaintiff's correspondence with Attorney Viscomi and what appears to be the original state-court complaint with partial redactions to the CSI Paragraphs.[2] *See generally* [*Stagnone I*, Doc. No. 10-2]. Those redactions did not comply with the state court's orders requiring the CSI Paragraphs to be withheld in their entirety. *See* [*Stagnone I*, Doc. No. 12-2 at 3]; [*Stagnone I*, Doc. No. 1-2 at 5]. Plaintiff's filing of Exhibit B thus constituted his first violation of those orders.

On February 6, 2026, State Street filed an emergency motion to seal Exhibit B and a motion for sanctions. [*Stagnone I*, Doc. No. 12]. That same day, Plaintiff publicly filed an opposition to State Street's anticipated motion to seal. [*Stagnone I*, Doc. No. 16]. Attachment 1 to that opposition included correspondence with Attorney Viscomi and State Street's counsel, as well as an excerpt from Exhibit B reproducing the partially redacted CSI Paragraphs. *See generally id.*; [*Stagnone I*, Doc. No. 16-1 at 1]. Plaintiff's filing of Attachment 1 constituted his second violation of the state court's orders.

[2] *Stagnone I* Doc. No. 10-2 is identified as Exhibit B on the ECF docket, although the document itself is labeled DRAFT Motion to Remand Exhibit A.

On February 9, 2026, Plaintiff notified Attorney Viscomi of State Street's motion to seal and reiterated his position that redacting the CSI Paragraphs in their entirety was unnecessary. [*Stagnone I*, Doc. No. 18-1 at 3]. He further stated that he interpreted Attorney Viscomi's silence in response to his February 6 email as confirmation that his proposed redactions did not disclose CSI and, on that basis, considered himself "free to post [his] redacted version [of the complaint] anywhere of [his] choosing on the public internet." [*Id.*]. Attorney Viscomi responded that he could not provide legal advice or review Plaintiff's pleadings for CSI and cautioned that his failure to identify CSI or comment on a filing "should not be taken as the Federal Reserve Board offering an opinion of any kind regarding [Plaintiff's] pleadings." [*Id.* at 4]. Plaintiff replied that he "plan[ned] to make this document and others widely available." [*Id.* at 5].

Also on February 9, 2026, I denied State Street's motion for sanctions but granted its emergency motion to seal Exhibit B.[3] [*Stagnone I*, Doc. No. 14]. I also granted Plaintiff leave to file a third amended complaint and expressly instructed that, if he included the CSI Paragraphs, he must "seal these paragraphs in their entirety." [*Id.*].[4] That same day, State Street moved for leave to file under seal portions of the certified state-court record that disclosed the CSI Paragraphs and had been impounded by the state court. [*Stagnone I*, Doc. No. 13]. I granted the motion that day. [*Stagnone I*, Doc. No. 17]. On February 10, 2026, Plaintiff—who did not yet receive electronic filing notifications and was unaware that the motion had been granted—filed an opposition. [*Stagnone I*, Doc. No. 18]. Exhibits A and B to that opposition reproduced material identical or

[3] Had I recognized at the time of my February 9, 2026 order that Attachment 1 reproduced the same CSI as Exhibit B, I would have sealed both filings. I subsequently sealed Attachment 1 upon discovering the disclosure.

[4] The February 9 order inadvertently refers to the CSI Paragraphs as appearing in the second amended complaint rather than the draft complaint in Exhibit B. That error is immaterial because both the emergency motion and the order expressly identify the CSI Paragraphs, leaving no ambiguity as to the information required to remain confidential.

nearly identical to the CSI I had ordered sealed the previous day. *See* [*Stagnone I*, Doc. No. 18-1 at 6–7]; [*Stagnone I*, Doc. No. 18-2 at 4–6]. Their filing constituted Plaintiff's third violation of a court order.

On February 12, 2026, after four public disclosures of the CSI and three violations of the impoundment orders, Plaintiff submitted his first formal request to the Board for authorization to use or disclose CSI. [*Stagnone III*, Doc. No. 1-7 at 2]. Senior Counsel Matthew Glover granted the request in part, providing Plaintiff with a highlighted version of the complaint and directing that the highlighted text "must be redacted before the document is filed in a venue where it may become public." [*Id*. at 3–4]. Because Plaintiff did not file that highlighted version with the Court, the record does not reveal the precise scope of the Board-approved redactions. The correspondence establishes, however, that all of paragraph 40 required redaction, while at least portions of paragraphs 42 and 44 did not. See *id*. at 6; [*Stagnone III*, Doc. No. 9-4 at 5–6]. Plaintiff nevertheless disputed the scope of the Board's required redactions and sought reconsideration, which Attorney Glover denied. *See, e.g.*, [*Stagnone III*, Doc. No. 1-7 at 6]. The Board's required redactions were thus narrower than the existing court orders, which required the CSI Paragraphs to be redacted in their entirety.

On April 26, 2026, Plaintiff filed a third amended complaint that omitted the federal claims and added claims arising from his termination. *See generally* [*Stagnone I*, Doc. No. 31]. In discussing his request to the Board, Plaintiff asserted that Attorney Viscomi had "identified a limited amount of CSI in Paragraphs 42 and 44." [*Id*. at 44]. The complaint then presented a two-column comparison of the original state-court complaint: the left column redacted the CSI Paragraphs in their entirety, while the right applied only limited redactions that Plaintiff characterized as "tacitly approved" by the Board. [*Id*. at 45 & n.16]. Plaintiff relied on that

comparison to support his wrongful-termination theory, arguing that the limited redactions were "well short of the 100% redactions demanded by State Street and its Agents." [*Id*. at 44–45].

That characterization is problematic in several respects. First, the record does not support Plaintiff's assertion that Attorney Viscomi approved limited redactions. To the contrary, the Viscomi Letter and subsequent correspondence repeatedly state that Attorney Viscomi would neither identify appropriate redactions nor review Plaintiff's filings for CSI. *See* [*Stagnone I*, Doc. No. 18-3]; [*Stagnone III*, Doc. No. 1-3 at 5]. Second, even assuming Plaintiff intended to refer to Attorney Glover, the limited redactions displayed in the third amended complaint did not reflect the Board's determination. Attorney Glover expressly declined to remove certain redactions that Plaintiff nevertheless omitted from the version he publicly filed. Compare [*Stagnone III*, Doc. No. 1-7 at 5], with *id*. at 6; see also [*Stagnone I*, Doc. No. 31 at 45]. Indeed, Plaintiff acknowledged elsewhere in the complaint that the displayed redactions reflected his own proposal to the Board and that he had appealed additional redactions the Board continued to require. [*Stagnone I*, Doc. No. 31 at 45 n.16].[5] The Board therefore did not "tacitly" approve Plaintiff's proposed redactions; it expressly identified redactions that remained necessary notwithstanding Plaintiff's disagreement with that determination. More fundamentally, regardless of the scope of the Board's authorization, my February 9 order required Plaintiff to redact the CSI Paragraphs in their entirety if he included them in the third amended complaint. [*Stagnone I*, Doc. No. 14]. His filing of the partially redacted paragraphs therefore constituted his fourth violation of a court order.

---

[5] As the complaint makes clear in a footnote, the limited redactions proposed in the righthand column of the table reflect those Mr. Stagnone thinks appropriate, not those approved by the Board. *See* [*Stagnone I*, Doc. No. 31 at 45 n.16] ("The exhibit above reflects the proposal Plaintiff sent to FRB for review."). Indeed, the complaint expressly lists certain redactions the Board requires to Paragraphs 40, 42, and 44 that "Plaintiff has appealed" because he believes that "still [go] too far." [*Id.*].

On April 28, 2026, State Street moved to seal the third amended complaint and for sanctions. [*Stagnone I*, Doc. No. 32]. I granted the request to seal the third amended complaint that same day.

**2. *Stagnone II***

On May 1, 2026, instead of filing an opposition to State Street's April 28, 2026 motion to seal and for sanctions in *Stagnone I*, Plaintiff initiated *Stagnone II* in this Court. [*Stagnone II*, Doc. No. 1]. The *Stagnone II* complaint asserts claims against State Street, the law firm representing State Street in *Stagnone I*, and the Board. *See generally* [*id.*]. Though difficult to decipher, the *Stagnone II* complaint appears to allege, among other things, that the *Stagnone II* defendants conspired to help State Street justify its termination of Mr. Stagnone and somehow violated his First Amendment rights by requiring that the CSI Paragraphs be redacted. *See generally* [*id.*]. The *Stagnone II* complaint explicitly incorporates portions of the *Stagnone I* third amended complaint, realleging paragraphs 106–114 of the *Stagnone I* third amended complaint containing the factual allegations, table, and CSI disclosures discussed above. *See* [*id.* at 10–14]. It also asserts new facts and accusations regarding the procedural history of Plaintiff's formal request to the Board. *See* [*id.* at 16]. The *Stagnone II* complaint was filed on the public docket, and I decided to seal it *sua sponte* immediately upon filing. The filing of the *Stagnone II* complaint constitutes Mr. Stagnone's fifth violation of a court order.

On May 8, 2026, State Street filed a motion for sanctions and, in light of my *sua sponte* decision, requested that the document remain sealed. [*Stagnone II*, Doc. No. 8 at 2].

**3. The Status Conference**

On May 12, 2026, I held a status conference to address the pending motions to seal and for sanctions in *Stagnone I & II* and to emphasize Plaintiff's obligation to comply with the Court's

sealing and redaction orders. *See* [*Stagnone II*, Doc. No. 12 at 3]. When asked whether he intended to continue disclosing CSI, Plaintiff explained that he believed he had properly filed at least one complaint under seal by submitting physical copies to the Clerk's Office and later leaving a voicemail requesting that the filing be sealed retroactively. *See* [*id.* at 6–7]. To be clear, none of Mr. Stagnone's filings in any of the three related actions have complied with this Court's rules for filing confidential information.[6]

I also observed that the *Stagnone II* complaint asserted new First Amendment claims while duplicating claims already pending in *Stagnone I*. [*Id.* at 8]. I acknowledged Plaintiff's request that *Stagnone I* be remanded to state court but made clear my intention to resolve the two actions together given their overlapping nature. [*Id.* at 7, 10]. I also expressed my skepticism regarding the viability of the newly asserted claims in *Stagnone II*. *See* [*id.* at 9]. Given those concerns and Plaintiff's stated preference to litigate his state-law claims in state court, I proposed dismissing the federal claims and remanding both actions. [*Id.*] Plaintiff opposed that proposal, and I therefore stated that the cases would not be remanded. [*Id.* at 9–10].

Plaintiff then asked to amend *Stagnone II* to add a claim under the Administrative Procedure Act ("APA"). [*Id.* at 13]. I declined, explaining that *Stagnone II,* effectively operated as a fourth amended complaint in that action. *See* [*id.*]. Plaintiff then requested to withdraw *Stagnone II* in its entirety. [*Id.*]. Accordingly, I granted the request and ordered that *Stagnone I* be remanded. [*Id.*]. After obtaining the remand he had sought, Plaintiff asked whether he could refile *Stagnone II* with the APA claim added. [*Id.* at 14]. I declined to provide legal advice on that question. [*Id.*].

---

[6] Pursuant to Local Rule 7.2, "[a] motion for impoundment must be presented each time a document . . . is to be filed" and the motion "must be filed and ruled upon prior to the submission of the actual material sought to be impounded." L.R. 7.2.

### 4. ***Stagnone III***

On May 15, 2026, three days after the status conference, Plaintiff commenced *Stagnone III* against State Street, its counsel in the prior actions, the Board, and three Board employees. [*Stagnone III*, Doc. No. 1]. The complaint repeats many of the allegations concerning Plaintiff's termination from the prior actions, adds allegations regarding his communications with the Board about the CSI Paragraphs, and asserts new claims under the APA, the Fifth Amendment, and various conspiracy theories.[7] *See generally* [*id.*].

The *Stagnone III* complaint also reproduces the allegations, comparison table, and characterizations of the Board's redaction decisions that had been the subject of prior sealing orders. [*Id.* at 22–27]. Although page 25 bears a note stating "Under seal pg 25-26," Plaintiff did not first move to impound the complaint as required by Local Rule 7.2, and the complaint was therefore filed on the public docket. *See* [*id.* at 25]. Upon receiving notice of the filing, I immediately ordered it sealed. *See* [*Stagnone III*, Doc. No. 9 at 5 n.2]. This filing constituted Plaintiff's eighth disclosure of the information contained in the CSI Paragraphs and his sixth violation of a court order.

On May 22, 2026, State Street filed a motion for sanctions and, acknowledging my *sua sponte* sealing decision, requested that the document remain impounded.[8] [*Stagnone III*, Doc. No. 9].

---

[7] The complaint also "requests injunctive relief from an indeterminant accusation that [Plaintiff] is in violation of 12 U.S.C. § 1818." [*Stagnone III*, Doc. No. 1 at 2]. I decline to do so as the matter is not yet ripe for judicial review. *See* 12 U.S.C. § 1818(h).

[8] As State Street points out, my *sua sponte* sealing of certain filings across the *Stagnone* actions did not result in formal impoundment orders as to each filing. Because those filings contain the same information subject to the state court's impoundment order, the corresponding material on the federal dockets shall remain sealed for the reasons and duration specified in that order.

## II. LEGAL STANDARD

Federal courts possess certain "'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditions disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). Courts therefore have "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 107 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). A court's inherent power to issue appropriate orders and impose sanctions "extends to the full range of litigation abuses" *Chambers*, 501 U.S. at 46. That sanction power includes not only the ability to impose lesser penalties such as awarding attorneys' fees but also more severe sanctions such as dismissal of the lawsuit. *Id.* at 45.

Those inherent powers also include the authority to dismiss frivolous or malicious actions. *See Mallard v. United States Dist. Ct.*, 490 U.S. 296, 307–08 (1989); *Brockton Sav. Bank v. Peat, Markwick, Mitchell & Co.*, 771 F.2d 5, 11 n.5 (1st Cir. 1985). As used in this context, "frivolous" does not refer to the subjective intent of a plaintiff. *Axcella Bld. Realty Trust v. Thompson*, 2024 WL 474539, at n.2 (D. Mass. Jan. 25, 2024). "Rather, in legal parlance, a complaint is 'frivolous' if it 'lacks an arguable basis in either law or fact.'" *Porter v. D + C Revocable Fam. Tr.*, No. CV 23-40170, 2024 WL 967575, at n.1 (D. Mass. Mar. 6, 2024) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

When a plaintiff proceeds *pro se*, the court must construe the complaint more liberally than a pleading drafted by a lawyer. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But with that caveat in mind, "even a *pro se* plaintiff is required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some

actionable legal theory." *Strahan v. AT&T Mobility LLC*, 270 F.Supp.3d 535, 540 (D. Mass. 2017) (internal citations and quotation marks omitted).

## III. SANCTIONS

State Street accuses Mr. Stagnone of abusing the judicial process and moves for sanctions in connection with Plaintiff's filing of the *Stagnone III* complaint.[9] [*Stagnone III*, Doc. No. 9 at 1]. State Street argues that the *Stagnone III* complaint is frivolous and vexatious and publicly discloses CSI in violation of multiple *Stagnone I* court orders and federal banking regulations. *See generally* [*id.*]. Defendant laments that Plaintiff's repeated violations and public disclosures are inflating its litigation expenses and seeks reasonable costs and attorneys' fees, as well as any additional sanctions necessary to deter further misconduct. *See* [*id.* at 1, 6-7]. Plaintiff disputes that he acted vexatiously or willfully, intentionally disclosed CSI, repeatedly violated the impoundment orders, or sought to increase State Street's litigation burden. *See generally* [*Stagnone III*, Doc. No. 11-1].

At least two facts are clear and undisputed. First, the impoundment orders in *Stagnone I* require that the CSI Paragraphs be redacted in full. Second, Plaintiff violated those orders on at least six occasions by publicly filing pleadings that reproduced some or all of the CSI Paragraphs without the required redactions.

A litigant must comply with a court order unless and until that order is modified or reversed. A party's disagreement with, misunderstanding of, or belief that an order rests on factual or legal error does not permit him to disregard it. *See Latin Am. Music Co. Inc. v. Media Power*

[9] State Street notes that Plaintiff initiated two criminal proceedings alleging perjury by State Street personnel and outside counsel, both of which were apparently "summarily denied by the state court." [*Stagnone* III, Doc. No. 9 at 5 n.1]. Because the record contains no evidence concerning those proceedings, I do not address them. Plaintiff is cautioned, however, that repeatedly filing meritless or vexatious actions against parties or counsel involved in these proceedings may warrant additional sanctions, including dismissal of newly filed actions or, if appropriate, the imposition of a prefiling injunction.

*Grp., Inc.*, 705 F.3d 34, 40 (1st Cir. 2013) (citation omitted) ("[U]nless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation."). Nor does a filing's compliance with the Board's redaction requirements excuse noncompliance with a broader court order. Unless and until Plaintiff establishes the precise redactions authorized by the Board and obtains a narrower order from this Court, he must comply with the existing orders requiring the CSI Paragraphs to be redacted in their entirety. *See U.S. v. Matthews*, 643 F.3d 9, 12–13 (1st Cir. 2011).

Plaintiff likewise cannot evade those orders by reproducing the protected material in a newly filed, related action. Allowing a litigant to circumvent an impoundment order simply by commencing another action based on the same underlying facts would render the original order ineffective. Accordingly, it is immaterial that Plaintiff's violations occurred on different dockets or in related actions bearing different case numbers. *See Nagle v. Franzese*, Nos. 89 Civ. 7117, 87 Civ. 3360, 1991 WL 4736, at *8 (S.D.N.Y. Jan. 18, 1991) (citing *Sutcliffe Storage & Warehouse Co. v. U.S.*, 162 F.2d 849, 851 (1st Cir. 1947)) (other citation omitted) ("Plainly, it is improper for a plaintiff to commence a second action to avoid unfavorable court rulings rendered in the first action.").

Plaintiff's pro se status warrants some measure of latitude, but it does not excuse repeated noncompliance with clear court orders. The Court previously declined to sanction him, yet the violations continued. I State Street should not be required to relitigate the issue of CSI disclosure. That issue was decided nearly a year and a half ago when the state court's impoundment order was entered, and I affirmed that order when I adopted it. Unless and until that order is modified, Plaintiff must redact the CSI Paragraphs in their entirety from any public filing.

I need not resolve the parties' dispute over Plaintiff's state of mind. Although willfulness and bad faith may bear on the nature and severity of an appropriate sanction, the relief imposed here does not require a finding that Plaintiff acted with either. Plaintiff's repeated violations—at least six despite multiple orders and warnings—are sufficient to warrant a monetary sanction toward State Street's reasonable costs and attorneys' fees incurred in responding to those violations. And because, as explained below, *Stagnone III* is dismissed for independent pleading grounds, I need not determine whether Plaintiff's conduct reflects deliberate gamesmanship, misunderstanding, or inadvertence, or whether more severe sanctions would otherwise be warranted.

## IV. FAILURE TO STATE A CLAIM

Before addressing the pleading deficiencies in Stagnone III, I note that many, if not all, of its claims could alternatively be dismissed as a sanction. At the May 12 status conference, I made clear that Plaintiff could not further amend his complaints and that *Stagnone I & II* should be resolved together. I permitted Plaintiff to voluntarily dismiss *Stagnone II* and remanded *Stagnone I* only because I understood that Plaintiff no longer intended to pursue the claims asserted in *Stagnone II*. Had I understood that Plaintiff instead intended to engage in claim splitting and a sort of forum and/or judge shopping, I would have resolved the related actions together in the interests of judicial economy and consistency.

Dismissal may be warranted where, as here, a litigant disregards prior warnings or court orders or engages in calculated efforts to circumvent adverse rulings. *See Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 79 (1st Cir. 2009) (identifying disregard of pre-sanction warnings, "obvious and repeated" violations of court orders, and "calculated gamesmanship" as relevant considerations); *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 230 F.R.D. 278, 279 (D.P.R.

2005) (quoting *In re Cargill, Inc.*, 66 F.3d 1256, 1262 (1st Cir. 1995)) (addressing voluntary dismissal and immediate refiling apparently intended to obtain a different judge); *see also Doe v. Briggs*, 945 F.Supp.2d 210, 215 (D. Mass. 2013) (quoting *Damiani v. R.I. Hosp.*, 704 F.2d 12, 16 (1st Cir. 1983)) (recognizing that dismissal, although a "drastic sanction," may be appropriate for "willful disobedience of the court's order"). Thus, Plaintiff cannot avoid prior rulings or limitations on amendment merely by voluntarily dismissing one action and repackaging substantially the same claims in another.

I need not, however, rest dismissal on my sanction authority because *Stagnone III* independently fails on the pleadings. The complaint asserts seventeen causes of action that fall into seven general categories: (1) Fifth Amendment violations; (2) Administrative Procedure Act ("APA") violations; (3) wrongful termination; (4) conspiracy; (5) retaliation; (6) false records; and (7) what Plaintiff labels "bogus claims." *See generally* [*Stagnone III*, Doc. No. 1]. In evaluating whether those claims state a claim for relief, I consider the allegations in the *Stagnone III* complaint and the five exhibits attached to it. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In other words, I shall not consider any allegations made in the *Stagnone I & II* complaints or any other pleading. For the reasons set forth below, each of the claims asserted in *Stagnone III* fails to state a claim.

**1. <u>Fifth Amendment Violations (Counts 4, 6, 8, and 10)</u>**

Counts 4, 6, 8, and 10 allege that the Board and three of its employees (collectively, the "Board Defendants") violated Plaintiff's Fifth Amendment rights in connection with the Board's review of his proposed CSI redactions. [*Stagnone III*, Doc. No. 1 at 29–32]. Count 4 alleges that the review process was arbitrary and capricious because Attorney Glover initially required full redaction of paragraph 39, which is not one of the CSI Paragraphs, but reversed that determination

after Plaintiff challenged it. [*Id.* at 29]. Counts 6, 8, and 10 concern Plaintiff's subsequent request for a "second opinion": Count 6 alleges that Plaintiff requested further review after he and Attorney Glover reached an impasse over the appropriate redactions; Count 8 alleges that the Board failed to respond to that request and three follow-up emails; and Count 10 alleges that the Board ultimately denied the request. [*Id.* at 31-32].

Although Plaintiff does not identify the particular Fifth Amendment right allegedly infringed, context suggests that his claims sound in due process. *See generally* [*id.*]. Both procedural and substantive due process require, at a minimum, the deprivation of a constitutionally protected interest. *Conley v. U.S. Dept. of State*, 731 F.Supp.3d 104, 111 (D. Mass. 2024) (citing *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 886 (1st Cir. 2010)). The complaint identifies no protected liberty or property interest of which the Board Defendants deprived Plaintiff. Nor do allegations that the Board changed one redaction determination, declined to provide a second opinion, or failed to respond to Plaintiff's communications establish such a deprivation. *See O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 786 (1980) ("[T]he Fifth Amendment does not apply to the indirect adverse effects of governmental action."). Counts 4, 6, 8, and 10 therefore fail to state a Fifth Amendment claim and are dismissed.

**2. <u>APA Violations (Counts 3, 5, 7, and 9)</u>**

Counts 3, 5, 7, and 9 assert APA claims against the Board and the individual Board Defendants. *See* [*Stagnone III*, Doc. No. 1 at 29–31]. The individual counts contain no supporting factual allegations beyond those appearing elsewhere in the complaint. *See* [*id.*]. Although Plaintiff proceeds pro se, the Court is not required to search the complaint and construct undeveloped claims on his behalf. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to

in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). On that basis alone, the claims are insufficiently pleaded.

For completeness, I consider two allegations elsewhere in the complaint that appear relevant to these counts: that the Board violated the APA by (1) failing to respond to Plaintiff's emails and (2) "exceed[ing] the scope of [its] protective regulations" in determining the redactions necessary to protect CSI. *E.g.*, [*Stagnone III*, Doc. No. 1 at 32]. The first allegation identifies no agency action or legal duty requiring the Board to respond to Plaintiff's emails and therefore does not state an APA claim. As to the second, it is unclear whether Plaintiff contends that the Board exceeded its statutory or regulatory authority or that its redaction determination was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(C). Either theory fails. Beyond expressing disagreement with the Board's determination, the complaint alleges no facts plausibly suggesting that the Board exceeded its authority, improperly classified information as CSI, or lacked a rational basis for the redactions it required. *See generally* [*Stagnone III*, Doc. No. 1]. Counts 3, 5, 7, and 9 therefore fail to state a claim and are dismissed.

### 3. <u>Wrongful Termination (Count 14)</u>

Count 14 asserts "wrongful termination" against State Street and its counsel. [*Id.* at 35]. Plaintiff alleges that Defendants violated the Americans with Disabilities Act ("ADA") and Mass. Gen. Laws ch. 151B by discriminating and retaliating against him for filing an MCAD complaint and a civil action. [*Id.*].

To the extent Count 14 asserts common-law wrongful termination, it fails to state a claim. Massachusetts recognizes a cause of action for wrongful termination where an at-will employee is discharged in violation of a clearly established public policy. *See Butler v. Shire Human Genetic Therapies, Inc.*, No. 16-cv-11692, 2017 WL 1007291, at *5 (D. Mass. Mar. 15, 2017) (citing *King*

*v. Driscoll*, 418 Mass. 576, 582 (1994)). The complaint does not identify a clearly established public policy supporting such a claim. *See id.* The substance of Count 14 instead alleges statutory discrimination and retaliation under the ADA and Chapter 151B. Because Counts 11 and 12 separately assert retaliation claims, I address that theory below and construe Count 14 only as alleging unlawful discrimination.

That theory also fails. The ADA prohibits employment discrimination "on the basis of disability," 42 U.S.C. §§ 12112(a), while Chapter 151B prohibits employment discrimination based on specified protected characteristics, including disability. *See* M.G.L. c. 151B, § 4(1). Count 14 does not allege that Plaintiff possesses a characteristic protected by either statute or that State Street terminated him because of such a characteristic. Rather, it alleges that Plaintiff was terminated "as a direct result of his protected activity" in filing discrimination complaints. [*Stagnone III*, Doc. No. 1 at 35]. That allegation sounds in retaliation, not status-based discrimination. Accordingly, Count 14 fails to state a claim for either common-law wrongful termination or statutory discrimination and is dismissed.

### 4. **Conspiracy Claims (Counts 1–2, 12 (pt. 2), and 13)**

Counts 1, 2, 12 (part 2), and 13 assert civil conspiracy claims. *See* [*Stagnone III*, Doc. No. 1 at 28, 22–34]. Massachusetts recognizes two forms of civil conspiracy. *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34 (1st Cir. 2009). The first type, known as a "true" or "coercive" conspiracy requires defendants, acting together, to possess "some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." *Walgreen Co. v. Haseotes*, 778 F.Supp.3d 264, 289 (D. Mass. 2025) (citations omitted) (alteration in original). The second type, known as a "concerted action" conspiracy imposes vicarious liability for another's tortious

conduct and therefore requires an underlying tort. *Id.* Although the complaint does not identify which theory supports each count, the claims fail under either.

Counts 1 and 2 allege "conspiracy by inaction" and "conspiracy by biased action" against the Board and the individual Board Defendants. [*Stagnone III*, Doc. No. 1 at 28]. A coercive-conspiracy theory fails because the complaint alleges no peculiar power of coercion arising from Defendants' collective action. *See generally* [*id.*]. Indeed, each accused defendant is statutorily authorized to protect CSI. A concerted-action theory likewise fails because the complaint identifies no actionable underlying tort; the alleged underlying misconduct consists of the APA and Fifth Amendment violations dismissed above. Moreover, to the extent the alleged conspiracy is confined to the Board and its employees acting within the scope of their official duties, their conduct is attributable to a single entity and does not constitute an agreement among separate actors. *See Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017); *Insulet Corp. v. EOFlow Co., Ltd.*, 755 F.Supp.3d 70, 97 (D. Mass. 2024).

Counts 12 (part 2) and 13 concern Plaintiff's termination. Count 12 alleges that all Defendants were "co-conspirators in plaintiff's wrongful termination," while Count 13 alleges that State Street and its counsel conspired to fabricate a pretextual justification for that termination. [*Stagnone III*, Doc. No. 1 at 33–34]. These claims fare no better. State Street independently possessed the authority to terminate Plaintiff, and the complaint alleges no peculiar coercive power that arose only from Defendants acting collectively. Nor does Plaintiff state a concerted-action claim because, as explained above, the complaint fails to plead an actionable underlying tort arising from his termination.

Accordingly, Counts 1, 2, 12 (part 2), and 13 fail to state a claim and are dismissed.

**5. <u>Retaliation Claims (Counts 11– 12 (pt. 1))</u>**

Counts 11 and 12 (part 1) assert claims for "retaliation" and "willful retaliation," respectively, against all Defendants. [*Stagnone III*, Doc. No. 1 at 32–33]. Neither the ADA nor Chapter 151B recognizes a separate cause of action for "willful retaliation." *See generally* 42 U.S.C. § 12203; Mass. Gen. Laws ch. 151B. Count 12 (part 1) is therefore dismissed.

Count 11 contains no supporting factual allegations and instead incorporates the preceding allegations wholesale. [*Stagnone III*, Doc. No. 1 at 32]. Although claims raised only perfunctorily are ordinarily deemed waived, *see Zannino*, 895 F.2d at 17, Plaintiff's retaliation theory is apparent elsewhere in the complaint: he alleges that State Street terminated him in retaliation for filing internal Speak Up complaints, an MCAD complaint, and *Stagnone I*. [*Stagnone III*, Doc. No. 1 at 3]. I therefore address that theory.

To state a retaliation claim under the ADA or Chapter 151B, a plaintiff must plausibly allege that (1) he engaged in protected conduct, (2) he suffered an adverse employment action, and (3) the protected conduct caused the adverse action. *See Rae v. Woburn Pub. Schs.*, 113 F.4th 86, 100 (1st Cir. 2024). Although a plaintiff need not plead a prima facie case, the allegations as a whole must render the retaliation claim plausible. *Grygiel v. HealthEquity, Inc.*, No. 25-cv-11970, 2025 WL 3451342, at *6 (D. Mass. Oct. 14, 2025) (quoting *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014)).

The first two elements are satisfied. Plaintiff engaged in protected activity by complaining of discrimination internally, filing an MCAD complaint, and commencing *Stagnone I*. *See Rae*, 113 F.4th at 100; Mass. Gen. Laws ch. 151B, § 4(4). His termination was also an adverse employment action. *See Rae*, 113 F.4th at 101. The question is therefore whether the complaint plausibly alleges causation. That requires facts supporting an inference that Plaintiff's protected

activity was the but-for cause of his termination, including that the relevant decisionmakers knew of the protected activity. *See id.*; *Stratton v. Bentley Univ.*, 113 F.4th 25, 45 (1st Cir. 2024).

The complaint alleges that State Street's Conduct Standards Committee ("CSC") unanimously terminated Plaintiff based "solely" on a memorandum prepared by State Street's Chief Compliance Officer (the "Clark Memo"). [*Stagnone III*, Doc. No. 1 at 9, 18, 34]. The Clark Memo states that Plaintiff publicly disclosed CSI on March 3, 2025, for a personal rather than business purpose, thereby violating State Street's Standards of Conduct; that State Street consistently treated unauthorized exfiltration of confidential information as grounds for termination; and that Plaintiff refused State Street's March 20 request to remove the CSI, requiring State Street to seek judicial relief. [*Stagnone III*, Doc. No. 1-4 at 2–4].

Neither the complaint nor the Clark Memo alleges that the CSC knew of Plaintiff's Speak Up or MCAD complaints. Those activities therefore cannot plausibly support causation. *See Stratton*, 113 F.4th at 45. The allegations do, however, support an inference that the CSC knew of *Stagnone I*, because the March 3 CSI disclosure identified in the Clark Memo occurred through Plaintiff's filing of that action. The viability of the claim thus turns on whether the complaint plausibly alleges that Plaintiff was terminated for filing *Stagnone I*, rather than for his disclosure and subsequent refusal to remove CSI.

Plaintiff attempts to establish pretext by alleging that the Clark Memo falsely stated that he "refus[ed] to remove CSI." [*Stagnone III*, Doc. No. 1 at 18]. The correspondence attached to the complaint does not support that characterization. Plaintiff expressed willingness to consider alternative wording or limited redactions, but he repeatedly declined State Street's request that he remove paragraphs 40, 42, and 44 or assent to their impoundment. *See* [*Stagnone III*, Doc. No. 1-6 at 4, 7–10]. When State Street requested a response by March 21, Plaintiff stated that he would

oppose the impoundment motion and was "not inclined to assent" to it absent an alternative to deleting the paragraphs. [*Id.* at 7–9]. Thus, although Plaintiff was willing to consider narrower redactions, he did not agree to remove the CSI in the manner or by the deadline State Street requested. The complaint therefore does not plausibly establish that the Clark Memo's account of his refusal was false.

Taken as a whole, the allegations do not plausibly suggest that Plaintiff's protected activity was the but-for cause of his termination. *See Rae*, 113 F.4th at 110. By Plaintiff's own allegations, the CSC relied "solely" on the Clark Memo, which attributed the termination recommendation to Plaintiff's unauthorized public disclosure of CSI and his refusal to remove it. [*Stagnone III*, Doc. No. 1 at 34]; *see generally* [*Stagnone III*, Doc. No. 1-4]. The complaint does not plausibly allege that the CSC knew of Plaintiff's Speak Up or MCAD complaints, and the materials attached to the complaint do not support his allegation that the stated reason for terminating him was false or pretextual. Accordingly, Counts 11 and 12 (part 1) are dismissed.

### 6. <u>False Records (Count 15)</u>

Count 15 asserts a claim against State Street for "filing a false business record" based on its submission of the Clark Memo to the MDUA. [*Stagnone III*, Doc. No. 1 at 37]. The complaint identifies no statutory or common-law basis for such a claim, and I am aware of no private right of action applicable to the alleged conduct. Count 15 therefore fails to state a claim and is dismissed.

### 7. <u>"Bogus Claims 1 & 2"</u>

The complaint also identifies two "bogus claims," apparently referring to assertions by State Street and its counsel that (1) Plaintiff was required to maintain the confidentiality of all information contained in the CSI Paragraphs and (2) Plaintiff refused to remove all CSI. [*Stagnone*

*III*, Doc. No. 1 at 36–37]. Neither allegation identifies a cognizable cause of action or otherwise explains how the challenged assertions give rise to liability. To the extent Plaintiff intends these allegations as independent claims for relief, they fail to state a claim and are dismissed.

## V. CONCLUSION

For the above reasons, State Street's motion for sanctions, [*Stagnone III*, Doc. No. 9], is GRANTED. Mr. Stagnone is ORDERED to pay State Street $2,500 toward the attorneys' fees and costs incurred in connection with *Stagnone III*. If Mr. Stagnone's financial circumstances prevent him from paying the sanction in a single lump sum, he shall, within 14 days of the date of this Order, submit a proposed installment payment plan for the Court's approval. Otherwise, Mr. Stagnone shall pay the $2,500 sanction in full within 30 days of the date of this Order.

Mr. Stagnone is further WARNED that any future filing by him, in this or any other action, that contains or reproduces material that this Court has ordered sealed shall result in the imposition of additional sanctions.

The Complaint in *Stagnone III* is DISMISSED with prejudice in its entirety.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge